ADAMS, Justice.
This appeal involves a claim and a counterclaim arising from the sale of land. John C. Baxter and Faye Baxter, the buyers, sued the sellers, J.T. Jones and Linda Jones, for breach of contract, fraud, and misrepresentation. The Baxters also sought equitable relief.[1] The Joneses counterclaimed for breach of contract and fraud and also sought equitable relief. The trial court, reserving the right to determine the equitable claims, permitted the sellers’ claim for breach of contract and the buyers’ claims for breach of contract, misrepresentation, and fraud to go to the jury. Because both the claim and the counterclaim alleged breach of contract, the trial judge gave the jury only one verdict form —reflecting a net verdict in favor of the Joneses. The jury credited the Baxters with $108,455.20, leaving the sum of $61,-544.80 due and owing to the Joneses. A separate verdict form was supplied to the jury on the Baxters’ misrepresentation and fraud claims, and the jury returned a verdict in favor of the Baxters finding mistaken misrepresentation and awarding only $1.00 in damages. Judgment was entered on the jury verdicts. The Baxters appeal on several grounds. We affirm.
On December 16, 1983, the Baxters contracted with the Joneses for the purchase of a 154-acre tract of land and the house situated thereon. The written contract stated that the total purchase price for the 154 acres was $170,000.00, to be paid with $1,500.00 earnest money, $8,500.00 cash upon delivery of the deed, the proceeds of a $75,000.00 loan from the Bank of Dade, $15,000.00 payable from the Baxters’ I.R.S. refund check, and a $70,000.00 note secured by a second mortgage given by the Baxters. Of that $170,000.00 purchase price, the Baxters made the $10,000.00 down payment ($1,500.00 plus $8,500.00), and paid $75,000.00 received from the bank *219 loan plus an additional $3,455.20, which was an amount paid outside the sums listed in the contract. The $15,000.00 payable from the I.R.S. refund was not paid.
On that same day, December 16, 1983, the Baxters entered into a separate, but interrelated, contract with the Joneses by which the Joneses conveyed to the Baxters a 50-acre tract of land, on which there were two existing poultry houses. In that contract, the Joneses agreed to construct two new poultry houses on the 154-acre tract. The agreement stated that “said new poultry houses [were] to be substituted and [were] to replace the property [50-acre tract] and the two existing poultry houses which the Baxters herein agreed to reconvey to Jones upon completion of the new houses.” The contract specified that the poultry houses were to be built in compliance with Central Soya (now Seaboard) specifications. Because the conveyance of the 50-acre tract was meant only as security for the performance of the Joneses’ agreement to build the two poultry houses on the 154-acre tract, the deed conveying the 50-acre tract to the Baxters stated that the Baxters would reconvey the 50 acres
upon completion of the construction of the poultry houses to be built upon lands which Jones[es] are later to convey to Baxters and to deliver possession of said lands and the improvements with the exception of two micro mist systems which may be required to be installed by the Baxters, thereon in as good a condition as when received....
Subsequent to these initial contracts, the Baxters agreed to allow the Joneses to obtain used materials to build the poultry houses. In return, the Baxters were to receive a credit against the purchase price for the amount saved by the use of used materials. The Baxters claimed that the Joneses guaranteed a minimum credit of $15,000.00 to $20,000.00 toward the purchase price, to be taken off the amount of the second mortgage. The Joneses claimed that there was no guaranteed minimum credit and that the credit to which the Baxters were entitled totaled only $10,-481.51.
On January 21 or 22, 1984, the Baxters gave the Joneses a note secured by a second mortgage. The note was made out in the amount of $85,000.00, but the parties have disagreed over that figure. The Joneses claimed that the $85,000.00 figure was in the note when it was signed. The Baxters claimed that the original sales agreement for the 154-acre tract stated that there was to be a $70,000.00 second mortgage. However, because the parties had agreed to reduce the amount secured by the second mortgage by the sum saved by using secondhand materials, the Baxters claimed that they signed the note even though it did not specify a dollar amount. It was the Baxters’ understanding that after the poultry houses were constructed, the specific amount of the credit would be determined and that the correct figure would be inserted in the blank on the note. However, it was also the Baxters’ understanding that the figure would equal $70,-000.00, less the credit for the use of the secondhand materials.
It is undisputed that the second mortgage stated that the loan was to be repaid in accordance with the terms and conditions of the promissory note, which in turn refers to the “sales agreement” dated December 16, 1983. However, the sales agreement did not specifically set forth the terms and conditions of repayment, stating only the following terms:
Subject to certain rights to obtain and use water from the property to be conveyed in favor of SELLERS, their heirs, and assigns [the Joneses will convey the property to the Baxters] for the sum of ONE HUNDRED SEVENTY THOUSAND ($170,000.00) DOLLARS payable as follows:
1. $ 1500 earnest money already deposited
8500 cash from BUYERS upon delivery of deed
75000 proceeds from Loan to be obtained by BUYERS for purchase money
15000 payable in the Spring of 1984 from IRS Refund Check
70000 2nd mortgage to be given to SELLERS according to *220 terms the PARTIES HAVE agreed upon — Buyers agree to assign 40 percent or $20,000 whichever is greater of checks to sellers & Bank of Dade
$170000
The Joneses began construction of the poultry houses, but the Baxters claimed that the poultry houses were never completed. Furthermore, the Baxters claimed that the houses were being built in a hole, that there was a drainage problem, and that there were many additional violations of the Seaboard specifications. As a result, the Baxters stated that they suffered damage because they had to hire someone to assist them in completing the work.[2] The Joneses claimed that the houses met the required Seaboard specifications and were complete except for clean-up work.
The 154-acre tract was conveyed to the Baxters, but the Baxters did not reconvey the 50-acre tract to the Joneses.[3] The Baxters sued the Joneses for breach of contract on the ground that the poultry houses were never completed to the specifications set forth in the contract for the conveyance of the 50-acre tract of land. The Baxters also sued the Joneses for fraud and misrepresentation on the grounds that the Joneses fraudulently persuaded them to sign a blank promissory note and then filled it in for $85,000.00. The Baxters sought specific performance and damages, as well as an injunction preventing the Joneses from trespassing on their land, and rescission or a moratorium on the real estate mortgage for $85,000.00 executed and delivered to the Joneses. The Joneses answered the complaint and proceeded to foreclose on the Baxters’ mortgage on the ground that the Baxters had failed to make any payments. The Baxters responded by amending their complaint to include allegations of fraud, misrepresentation, deceit, wrongful foreclosure, libelous defamation of character, and breach of contract. The Baxters also successfully requested a temporary restraining order to prevent the Joneses’ foreclosure proceedings. After an initial continuance of the foreclosure sale pursuant to an agreement between the parties, the court ultimately enjoined the foreclosure sale on the ground that the signatures on the mortgage were improperly acknowledged by the notary.[4]
The Joneses answered the Baxters’ amended complaint and counterclaimed for breach of contract on the grounds that the Baxters had failed to reconvey the 50-acre tract to the Joneses pursuant to the contract. They also counterclaimed for fraud on the ground that the Baxters had never intended to reconvey the 50-acre tract. The Joneses sought specific performance; a declaration that the deed conveying the 50-acre tract was void; an equitable mortgage; and an injunction permitting the Joneses to continue to use the two existing poultry houses on the 50-acre tract. The Baxters answered the counterclaim, denying all material allegations.
The trial court reserved the right to decide all of the equitable claims after the jury made its findings on the legal issues. At trial, the only legal issues the judge permitted to go to the jury were the Bax-ters’ claims for breach of contract, fraud, and misrepresentation and the Joneses’ claim for breach of contract.[5] Both parties made timely motions for a directed verdict on the complaint and on the counterclaim.
An independent verdict form was supplied to the jury on the fraud claim, and the *221 jury found “the issues in favor of the Bax-ters and against the Joneses and assessed] damages at $1.00 mistaken misrepresentation.” However, on the respective claims of each party for breach of contract, the judge decided to give the jury only one verdict form — reflecting a net verdict in favor of the Joneses. The form stated:
On the breach of contract issue, we the jury find that the Baxters are entitled to a credit of_leaving a balance of_due the Joneses.
Foreperson
The jury returned a verdict on the breach of contract claim finding that the “Baxters [were] entitled to a credit of $108,455.20 leaving a balance of $61,544.80 due the Joneses. Interest beginning 5/7/84 to date at HPCA method of com[p]uting interest.” Judgment was entered on the jury verdict.
Subsequent to the jury verdicts, the judge made the following orders with regard to the non-jury issues:
The mortgage executed by the Baxters to the Joneses being improperly acknowledged, ... [it] does not pass legal title but it is operative in equity as an agreement to make a mortgage.
The court declared an equitable lien against the 154-acre tract in the amount of $61,-544.80, the amount found by the jury to be due, plus interest in the amount of $18,-027.49. The court also held that if the entire sum was not paid in full within 60 days, the Joneses would be entitled to seek an equitable foreclosure. Finally, the court concluded that the Joneses had substantially complied with the contract to construct two poultry houses and that the jury verdict reflected not only the credits due to the Baxters for the used materials, but also any damages suffered by the Baxters as a result of the Joneses’ breach of contract. Therefore, the trial court ordered the Bax-ters to reconvey the 50-acre tract within 30 days. The court denied the Joneses’ request to use water from the real property conveyed to the Baxters.
The Baxters filed a post-judgment motion for a new trial, which was denied. The Baxters appeal, raising the following issues:
1) Whether the judgment on the jury verdict should be reversed because the verdict form drafted by the judge wrongfully invaded the province of the jury by predetermining the jury verdict.
2) Whether the trial court erred in not granting a new trial because the jury verdict on the breach of contract claim was subject to at least two interpretations.
3) Whether it was error in this suit for fraud, misrepresentation, and breach of contract, based on the sale of land, for the trial court, in equity, to make all sums owed on the contract due within 60 days, where the jury verdict found liability on both counts, and where the effect of such a demand, plaintiffs say, would likely be to cause them to forfeit the property.
I.
The Baxters’ argument regarding the breach of contract claim is that the verdict form supplied to the jury was unfair: 1) because it presumed the existence of a valid and enforceable contract for the sale of the 154-acre tract; and 2) because it presumed that the Joneses were entitled to recover more than the Baxters. The Bax-ters argue that the wording of the verdict form suggested that the Joneses would be entitled to some compensation regardless of the jury findings, and that this amounted to the trial court’s taking factual issues away from the jury. Specifically, they say the judge did not permit the jury to evaluate the credibility of the Joneses’ testimony.
Taking the Baxters’ argument at face value, it appears to have some merit. But, a simplistic, face value approach to this complex case is inappropriate.

Presumption of a Valid and Enforceable Contract ■

The Baxters claim that the court’s conclusion that there was a valid contract was wrong for two reasons: First, they say they never admitted the existence of a valid and enforceable contract regarding the *222 154-acre tract and, therefore, that it was the Joneses’ burden to prove its validity. Second, the Baxters claimed that fraudulent acts of the Joneses in filling out the note and the second mortgage in the amount of $85,000.00 resulted in voiding the contract for the 154-acre tract.
We agree with the Baxters’ argument that the verdict form presumed the existence of a valid and enforceable contract. However, if the trial court could and did make that presumption by directing a verdict on the issue of the existence of a valid and enforceable contract, then the verdict form would not have tainted the verdict.
Each party in this case had made a timely motion for a directed verdict in its favor on both the complaint and the counterclaim. The trial court had the authority to grant a directed verdict, but, if there was any evidence to support the Baxters’ claim that there was not a valid and enforceable contract, then the question should have gone to the jury. See Turner v. Peoples Bank, 378 So.2d 706 (Ala.1979). On the other hand, if the totality of the evidence failed to present a triable issue of fact as to the enforceability of the contract, then the jury form supplied by the judge was tantamount to a directed verdict on that issue. Our review of the record discloses that the trial court did not err in so directing a verdict on that theory of the Joneses’ claim.
In this case, the trial court had to charge the jury on the four elements of a claim for breach of contract: 1) proof of a valid and enforceable contract; 2) the terms and conditions of the contract, including the contract price; 3) a breach of the contract; and 4) damages. But not all of these elements had to be decided by the jury. Either the parties could admit (or not dispute) any of the elements, or, if there was no evidence to support any particular element, the trial court could direct a verdict on that element, with the remaining elements left to the jury. Hamer v. Nelson, 516 So.2d 1381 (Ala.1987).
The trial court did not specifically direct a verdict on any particular element of the claims that went to the jury. Nevertheless, although the trial court never formally ordered it, there is evidence in the record that the trial judge intended to, and in effect did, direct a verdict on the first element of the Joneses’ breach of contract claim — the existence of a valid and enforceable contract for the sale of the 154-acre tract.
First, in a discussion between the judge and counsel, out of the presence of the jury, the following statements were made:
THE COURT: Let’s get back to the verdict forms.
MR. SCRUGGS: What this really is, and I wrote it out so we can understand it. You’re giving the affirmative charge[6] in favor of the Joneses.
THE COURT: On the contract.
MR. SCRUGGS: On the contract. That’s what you’re doing.
THE COURT: That’s right. For the jury to determine the damages.
MR. SCRUGGS: But you’ve got two elements of it. You give them an affirmative charge with a double hypothesis. The first hypothesis is that they establish how much the Joneses are entitled to recover and the second hypothesis, how much the Baxters are entitled to credit.
THE COURT: I think under the old terminology that’s probably right, but is there a fallacy in there?
MR. SCRUGGS: It presupposes as a matter of law that the amount that the jury must find due to Jones exceeds the amount of the credit. What that does is it eliminates the burden of proof of veracity on behalf of Jones. One of the *223 charges you’ll give, if you find that a witness has lied about one matter the jury can disregard all of the testimony of a witness. In this case if they were so to find, they can’t disregard the testimony of Mr. Jones, they must, in fact, give him a verdict.
THE COURT: But you can't disregard the fact that there was a contract and you cannot disregard the fact that there was a note and mortgage. Now, the amount for which that note and mortgage was supposed to have been executed at the very least was seventy thousand dollars. And the jury cannot say, “Well, we think it was sixty thousand dollars or we think it was ten thousand dollars.” It’s either got to be seventy thousand or it’s got to be eighty-five, and the jury’s not free to come up with any other amount, and if you take that premise and you take the other evidence in its strongest light toward the Baxters, then you come up with the bottom line being that the Baxters owe something, and if the jury came back on the contract count and found for the Baxters ten thousand dollars, how in the world would that ever withstand a post-trial motion? How could you figure out a way that the jury could do that?
MR. SCRUGGS: I would say they did not believe Mr. Jones.
THE COURT: You can disregard his testimony and still how can you justify it?
MR. SCRUGGS: All right.
THE COURT: Well, tell me.
MR. SCRUGGS: I don’t know. I’m trying to avoid having an affirmative charge with two hypotheses on my case.
MS. KELLETT: Well, but you will charge as to the damages in a contract case, the difference in value between what you bargained for and what you got and tell the jury that they are entitled to setoffs, whatever the contract amount is; right?
THE COURT: Right. Something we discussed before you got here, we were discussing whether or not you were entitled to that measure of damages and also to the labor that the Baxters expended in bringing it up to some stage of completion. My thinking was that there’s no proof as to the value of those services. MS. KELLETT: No. I think that that was included in the fifty thousand dollar figure.
THE COURT: And you can only get the fifty thousand under that one measure of damages.
MS. KELLETT: Right....
Second, in his oral jury instructions, the trial judge stated:
There must be proof that there was a contract. In this case there is no dispute ... that there was a contract. A contract is just an agreement between two or more people to do something or not to do something in exchange for consideration. That consideration may be money paid, it may be a promise to pay or it may be a promise to do something or a promise not to do something. A contract can be in writing or it can be a verbal contract. At least, sometimes contracts can be legally enforceable even though they’re not in writing. So, we have here a claim on both sides that there’s been a breach of contract.
You’ve got to decide, assuming that there was a contract, what the terms and conditions of the contract were, and you are to look at the evidence, all of the evidence, in making that determination. And then you’ve got to decide was there a breach of that agreement....
The confusion in this case arises from several factors. First, the trial court never formally directed a verdict on the issue of the validity of the contract for the sale of the 154-acre tract; rather, the court simply agreed with the Baxters’ counsel that it was giving an “affirmative charge” in favor of the Joneses. To further complicate matters, the affirmative charge is no longer used in Alabama, although it has generally been replaced by the directed verdict.[7]
*224 The second cause of the confusion is that in giving its oral jury charge, the court instructed the jury that there was no dispute over the existence of a valid and enforceable contract, but nevertheless instructed the jury that one of the elements of breach of contract it had to find was the existence of a valid and enforceable contract. It is difficult to tell whether the trial court actually expected the jury to determine the existence of a valid and enforceable contract, or if the court mentioned the element as a formality, knowing that that issue had already been decided.
Although there is no independent order directing a verdict, we conclude that the language of the trial court indicates an intent to direct a verdict on the issue of the validity of the contract regarding the 154-acre tract. However, our analysis is not complete. We must now consider whether the directed verdict was improper, i.e., whether there was evidence, or a reasonable inference arising therefrom, to support the Baxters’ claim that there was no valid and enforceable contract. See Turner, 378 So.2d 706.
The Baxters claim that there was an issue of fact that should have been presented to the jury. They argue that they never admitted the validity of the contract regarding the 154-acre tract. In fact, the Baxters claim that the contract for the 154-acre tract was void because the Jones-es committed fraud when filling in the amount of the note and the second mortgage, thus making the entire series of contracts void, or voidable. If the contract was void, or voidable, they argue, then the trial judge erred in stating that there was no dispute between the parties over the existence of a valid and enforceable contract and in wording the verdict form so that it presumed the existence of a valid contract.
The Baxters raise an interesting argument, but it has a fallacy. The Baxters claim that all the contracts and agreements were interrelated. But, on appeal, they seem to imply that only the contract regarding the 154-acre tract would have been void due to fraud. We disagree.
If the contract regarding the 154-acre tract was void due to fraud in the execution of the second mortgage, then the interrelated contract for the conveyance of the 50-acre tract and the construction of the two poultry houses must also be void, because it was directly related to the contract for the sale of the 154-acre tract on which the poultry houses were to be built. In order for the Baxters to recover on their breach of contract claim, and we must assume they desire to do so, they have the burden of proving that there was a valid and enforceable contract. If the contract relating to the 50-acre tract is void for fraud, then the Baxters cannot recover on their breach of contract claim because there would be no valid contract — the existence of which is an essential element of proof. We cannot assume that that is what the Baxters are attempting to argue.

Use of a Single Verdict Form

Having concluded that the trial court had the authority to, and did, in fact, direct a verdict in favor of the Joneses on the issue of the validity of the contract for the sale of the 154-acre tract, this Court must next consider whether the trial court erred in supplying only one verdict form — reflecting a net verdict in favor of the Joneses — for both breach of contract claims.
The Baxters claim that the use of one verdict form was reversible error because it presumed that the Joneses were entitled to recover more than the Baxters, and thus, that the court took factual issues away from the jury. Once again, although we agree that on its face the verdict form appears to take factual determinations away from the jury, after analyzing the trial court’s actions, we conclude that the verdict form — though perhaps awkward— resulted in a fair verdict that was supported by the evidence.
The facts of this case, as well as the circumstances of the trial and the verdict, are unusual. This case involves a complaint and a counterclaim, each alleging breach of contract. But the claims are not simply that one contract was breached; rather they are that the entire series of *225 interrelated contracts and agreements was breached. The Baxters claim that the Joneses breached the contracts entered into between the parties by not completing the poultry houses to Seaboard specifications. The Joneses claim that the Baxters breached the contracts by not reconveying the 50-acre tract once the poultry houses were completed.
The complexity of the facts is only increased by the trial court’s decision to use only one verdict form for two separate breach of contract claims. Under the best of circumstances when there is both a claim and a counterclaim it can be difficult for a jury to separate and distinguish the various facts and evidence necessary to reach a verdict on each claim. This case involved not only a claim and a counterclaim, but also two contracts, a mortgage, and a promissory note, all of which were interrelated and disputed. Given the number of disputed documents involved, it would have been reasonable for the trial court to give verdict forms that permitted the jury to decide and assess damages, if any, on the Baxters’ breach of contract claim independent from the Joneses’ breach of contract claim. For instance, the verdict forms might have been worded this way:
On the Baxters’ breach of contract claim, we the jury find in favor of the Baxters and assess damages at_
s/foreman
On the Baxters’ breach of contract claim, we the jury find in favor of the Joneses.
s/foreman
[Corresponding verdict forms could have been supplied for the Joneses’ breach of contract claim.]
Presumably, the trial judge was attempting to avoid confusing the jury with the complicated facts and issues in the claim and the counterclaim alleging breach of contract. However, if the jury had rendered independent verdicts, then on appeal this Court would know precisely who prevailed on each claim for breach of contract and the specific amount of damages. Nevertheless, although that probably would have made this Court’s review of the jury verdicts simpler, the trial judge chose to combine the two breach of contract claims and permit the jury to arrive at a net verdict — taking into consideration the contract price and the damages and credits due to each party.
Because the court had directed a verdict on the existence and validity of the contract, the Baxters were entitled to the 154-acre tract and the Joneses were entitled to the contract price. That left the jury to determine the contract price, which was either $170,000.00, as listed in the contract, or $185,000.00. (The $170,000.00 figure was stated in the sales contract. The $185,000.00 figure could be arrived at if the jury concluded that the Baxters knowingly signed the $85,000.00 note and second mortgage (rather than $70,000.00), thus adding $15,000.00 to the $170,000.00 price listed in the contract.)
Furthermore, once the jury determined the contract price, deductions and credits were then subtracted, including sums already paid by the Baxters to the Joneses and a credit between $10,481.51 and $20,-000.00 for the use of secondhand construction materials. Finally, if the jury determined that the Baxters were entitled to damages for their breach of contract claim, then that, too, could be subtracted from the contract price.
However, the judge’s approach — using only one verdict form that reflected a net verdict in favor of the Joneses — works only if it would be impossible, under any scenario, for the Baxters to be entitled to damages greater than the contract price. Because punitive damages were not available on the breach of contract claim, based on the evidence, it was possible for the trial court to conclude that no matter what credits and damages the jury awarded the Bax-ters, they could not exceed the $170,000.00 or $185,000.00 contract price.
The evidence, taken in a light most favorable to the Baxters, indicated the following: First, that the Baxters previously had paid $88,455.20 of the contract price to the Joneses; second, that the Baxters were entitled to a maximum credit of $20,000.00 for the secondhand materials; and, finally, that the compensatory damages due the *226 Baxters totaled $50,000.00. Thus, the maximum amount the Baxters could be credited or could recover totaled $158,455.20 ($88,-455.20 + $20,000.00 + $50,000.00 = $158,-455.20). On the other hand, the Joneses would be entitled to recover an amount equal to the contract price (either $170,-000.00 or $185,000.00), less the $158,455.20 amount due to the Baxters, leaving a total balance due the Joneses of either $11,-544.80, or $26,544.80.
In fact, the jury determined that the contract price was $170,000.00 and credited the Baxters with $108,455.20, leaving a balance of $61,544.80 due and owing to the Joneses. Apparently, the $108,455.20 credit awarded by the jury was based on (1) an $88,455.20 credit for amounts already paid by the Baxters and (2) $20,000.00 for the credit on the used materials and damages for any injuries suffered by the Baxters as a result of the Joneses’ breach of contract.[8]
Based on the foregoing analysis, we conclude that the judge did not err in requiring the jury to reach a net verdict in favor of the Joneses. Although this Court might have been able to evaluate this appeal more efficiently if the jury had reached separate verdicts, the jury reached a result that was supported by the evidence.
II.
The Baxters also argue that the trial court erred in not granting their motion for a new trial because the jury verdict on the breach of contract claim was confusing and subject to at least two interpretations. The Baxters claim that it is impossible, based solely on the verdict form, to determine what the jury included in determining that a $108,455.20 credit was due to them. The Baxters argue that that figure might have included a credit for the $88,455.20 already paid to the Joneses, but that if it did not, then the Baxters would be entitled to a recovery from the Joneses.[9]
In theory, the Baxters’ argument is correct. However, the trial court instructed the jury to consider any amounts already paid to the Joneses, stating:
Another question that you must decide with regard to this contract issue is how much credit the Baxters are due against that original indebtedness. The Baxters say, first of all, that they are entitled to a credit on the basis that the Joneses breached the contract concerning the building of the chicken houses. The Bax-ters, in other words, say, “The Joneses breached the contract, [they] didn’t build the chicken houses as they were supposed to; we suffered damages from that, and our damages should be credited against anything that we might otherwise owe the Joneses.”
Furthermore, while the jury was attempting to reach a verdict, the jury foreman sent the following question to the judge:
The second question is: Should we compute the interest before or after credit is applied for used material or credits for payments?
This is sufficient evidence for this Court to conclude that the jury considered the amounts already paid when it determined the credits due to the Baxters.
Based on the foregoing, we conclude that the jury verdict is subject to only one reasonable interpretation. Thus, the use of this verdict form does not require reversal.
III.
The trial court ordered that an equitable lien be placed against the 154-acre tract, the house, and the two poultry houses in the amount awarded to the Joneses ($61,544.80 + $18,027.49 (interest) = $79,-572.29). The final issue on appeal is whether, in equity, it was improper for the trial court to make the entire sum due on the contract payable within 60 days and then to permit the Joneses to seek an equitable *227 foreclosure if the judgment was not satisfied in that time.
On the ground that one who seeks equity must do equity, see Title Ins. Co. v. Ward, 279 Ala. 24, 181 So.2d 93 (1965), the Bax-ters claim that the 60-day time limit was unfair for four reasons: First, considering the fact that the jury found the Joneses liable for mistaken misrepresentation and breach of contract, they have not “done equity” and it would be unfair to require payment within such a short period; second, the relatively short time period is likely to cause the Baxters to lose the property; third, in the original agreements, the promissory note was to be paid off from a percentage of the income from the poultry business and it is unfair to require payments from another source or by a different method; and finally, the time limit places them in a worse position than if they had never brought a lawsuit, which is also unfair. We disagree.
The second mortgage does not set forth the specific terms or conditions of repayment, nor does it set forth a due date.[10] Rather, the second mortgage refers to the promissory note, which in turn refers to the sales agreement entered into on December 16, 1983. However, that sales agreement provides no specific terms or conditions either.
The Baxters contend that the agreement states that the loan was to be repaid from the profits of the poultry farming business. Although the sales agreement does mention that the Joneses and the Bank of Dade were entitled to 40 percent of the profits[11] or $20,000.00, whichever was greater, it mentions nothing about that being a repayment of the note or the second mortgage.
Because the series of agreements did not set forth any specific requirements for the repayment of the loan, the trial court could set a reasonable time limit. We do not believe the trial judge abused his discretion in setting a 60-day limit for the repayment of the loan.
For the foregoing reasons, we conclude that the trial court did not err and that the judgment is due to be affirmed.
AFFIRMED.
JONES, SHORES and STEAGALL, JJ., concur.
HOUSTON, J., concurs in the result.

. The Baxters made several other claims, but they were ultimately dismissed and are not at issue on appeal.

. The only evidence presented at trial regarding the amount of damages indicated that the Bax-ters suffered approximately $50,000.00 damage as a result of the Joneses' failure to complete the poultry houses.

. The Baxters claimed that they did not recon-vey the land because the Joneses had failed to comply with the contract by not building the houses within Seaboard’s specifications.

. In a subsequent explanation of its order enjoining foreclosure because the mortgage had been improperly acknowledged, the trial court stated that its conclusions regarding the validity of the mortgage were only for the purpose of the foreclosure request and would not affect a jury finding on that issue.

.The judge found insufficient evidence to sustain a jury verdict on the Baxters’ claims for promissory fraud and attempted wrongful foreclosure and for the Joneses' claim for fraud.

. The "affirmative charge” has been abolished in Alabama, but it was a unique procedure:
Where the party having the burden of proof has made out his case by uncontradicted testimony, the case is sent to the jury but with a special direction that "if the jury believe the evidence, it must find for the plaintiff." In federal courts and in most states, the case is not submitted to the jury under the circumstances described; instead the court directs a verdict. Rule 50(a) last sentence clearly provides that the order granting a motion for a directed verdict is effective without any assent of the jury. This eliminates the illogical ritual required under former practice.
Committee Comments, A.R.Civ.P. 50(a).

. The trial court apparently recognized that fact by referring to the affirmative charge as the "old terminology."

. It is not at issue on appeal, but based on the jury verdict, it does not appear that the Joneses recovered anything on their breach of contract claim.

. The $108,455.20 credit plus $88,455.20 already paid to the Joneses equals $196,910.40; subtract the contract price (either $170,000.00 or $185,-000.00) from $196,910.40, for a net sum due to the Baxters.

. For the rule with respect to installment sales contracts in the absence of an acceleration clause, see Rosenfield v. City Paper Co., 527 So.2d 704 (Ala.1988).

. Although the agreement itself did not use the term "profits,” the parties at trial spoke of it in terms of profits. There is nothing in the record, however, to indicate what time period was contemplated, or what proportions of the profits the bank and the sellers were to receive.